**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JERARD BRADLEY,** | : | |
| **Petitioner** | : | |
| | : | **CIVIL ACTION NO. 3:14-0797** |
| **v.** | : | |
| | | **(Judge Mannion)** |
| **GERALD ROZUM,** *et al.,* | : | |
| **Respondents** | : | |

**MEMORANDUM**

On March 24, 2014,[1] petitioner, Jerard Bradley, an inmate confined in the State Correctional Institution at Somerset, Pennsylvania ("PA"), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He attached a memorandum and exhibits to his petition. Petitioner attacks his April 17, 1996 judgment of sentence imposed by the Court of Common Pleas for Lycoming County, PA, criminal case number CP-41-CR-0935-1991. On October 20, 2014, petitioner completed and filed a *Miller/Mason* Notice of Election indicating that he labeled his petition as one under §2254, and that he chose to have the court rule on it as filed. (Doc. 10). *See United States v. Miller, 197 F.3d 644 (3d Cir. 1999); Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).*

After a show cause order was issued, (Doc. 11), respondent Lycoming County District Attorney filed a brief and a response to the habeas petition,

_____

1. Since the habeas petition was signed by petitioner on March 24, 2014, under the prison mailbox rule, the court construes the petition as being filed on that date. *See Bond v. Visionquest, 410 Fed.Appx. 510 (3d Cir. 2011).*

(Doc. 19, Doc. 20), with exhibits, including copies of the state court record. Respondent also filed additional exhibits on January 20, 2015. (Doc. 23). Petitioner then filed a traverse on February 24, 2015. (Doc. 26). Petitioner's habeas petition will be dismissed as untimely, additionally, petitioner has failed to show that he is entitled to equitable tolling.

## I.    Background

The PA Superior Court detailed the procedural background of petitioner's criminal case in its November 5, 2012, Memorandum affirming the trial court's denial of petitioner's May 25, 2011, "Application for Relief/Seeking Correction and Modification of an Illegal Sentence Due to Obvious Errors, Patent Mistakes and Illegal Sentencing." This filing was construed as Bradley's fourth Post Conviction Relief Act ("PCRA") petition,[2] under 42 Pa.C.S.A. §§9541, *et seq*., (Doc. 19-21), and stated as follows:

> On May 18, 1992, [Bradley] pled guilty to various charges arising from his assault of a corrections officer while he was in prison awaiting trial for murder charges. On April 17, 1996, the trial court sentenced [Bradley] to two (2) to ten (10) years imprisonment for the assault of the officer. [Fn.1 Sentencing on the assault charges were deferred until the murder charge was resolved.] [Bradley] did not file a direct appeal. Although [Bradley] filed two separate petitions pursuant to the [PCRA], both were deemed to be untimely filed. On March 29, 2010, [Bradley] filed []his "Petition for

---

2. The Superior Court noted that it affirmed the dismissal of Bradley's three prior PCRA petitions in: *Commonwealth v. Bradley*, 785 MDA 2010 (Pa.Super. 2010); *Commonwealth v. Bradley*, 395 MDA 2009 (Pa.Super. 2009); and *Commonwealth v. Bradley*, 924 MDA 2001 (Pa.Super. 2002).

Specific Performance of Plea Agreement" in relation to his guilty plea on May 18, 1992. The trial court denied [Bradley's] petition on April 7, 2010.

\*      \*      \*

As [the Superior Court] deem[ed] [Bradley's March 29, 2010] post-conviction filing to be a PCRA petition, [it] also must determine if his petition was timely filed.

\*      \*      \*

[Bradley] was sentenced to two to ten years imprisonment on April 17, 1996. [Fn.3 We note that this sentence is "consecutive to the sentence imposed to the charge in count one, criminal homicide."] [Bradley] did not file a direct appeal. Thus,[Bradley's] judgment of sentence became final 30 days later on May 17, 1996, based upon the expiration for filing a notice of appeal in [the Superior] Court. As the [third PCRA] petition was filed nearly fourteen years later on March 29, 2010 and [Bradley] does not allege any of the timeliness exceptions apply, the trial court properly dismissed [Bradley's] [third PCRA] petition as untimely.

The Superior Court, (Doc. 19-21), then addressed Bradley's appeal of the dismissal of his May 25, 2011 filing, which was considered his fourth PCRA petition. The trial court dismissed this petition on June 1, 2011 as untimely. In his appeal, Bradley claimed that he was "entitled to the specific performance of the original plea agreement, or immediately vacating the illegal sentence and discharge." Bradley claimed that his plea agreement called for a two year flat sentence. The Superior Court found that Bradley's May 25, 2011 petition was "patently untimely" under 42 Pa.C.S.A. §9545, and that he failed to plead or prove any of the exceptions to the PCRA's timeliness requirement. Thus, the Superior Court affirmed the trial court's dismissal of

Bradley's fourth PCRA petition as untimely without addressing the merits of his claim.

After the Superior Court affirmed the trial court's dismissal of Bradley's fourth PCRA petition, he filed a petition for allowance of appeal with the PA Supreme Court. The PA Supreme Court denied the petition on March 26, 2013. (Doc. 19-22).

As stated, on March 24, 2014, petitioner Bradley filed the instant petition for writ of habeas corpus in which he challenges his April 17, 1996 judgment of sentence and requests this court to vacate his sentence and to order the trial court to re-sentence him in accordance with his plea agreement. Bradley basically claims that his trial counsel was ineffective for failing to file a direct appeal challenging his sentence as illegal despite his counsel's representation that he filed it. In their response, respondents argue that the petition should be dismissed as untimely. Petitioner has filed a traverse. The parties dispute whether equitable tolling saves the petition.

## II.   Discussion

This court has jurisdiction over this case under 28 U.S.C. §2254(a).

Bradley's judgment of sentence became final on May 17, 1996, and he filed his instant habeas petition after the effective date of the AEDPA. Thus, his habeas petition is governed by the AEDPA's one year statute of limitations. Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).

4

A state prisoner requesting habeas corpus relief pursuant to 28 U.S.C. §2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (d)(1) A one-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of - (A) the date on which the judgment became final by the conclusion of direct review or the expiration for seeking such review . . .
>
> (d)(2) The time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(1)-(2)(emphasis added); *see generally*, Jones v. Morton, 195 F.3d. 153, 157 (3d Cir. 1999). Thus, under the plain terms of §2244(d)(1)(A), the period of time for filing a habeas corpus petition begins to run when direct review processes are concluded. *See* Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). ("[T]he AEDPA provides that upon conclusion of direct review of a judgment of conviction, the one year period within which to file a federal habeas corpus petition commences, but the running of the period is suspended for the period when state post-conviction proceedings are pending in any state court.")(emphasis in original); Fields v. Johnson, 159 F.3d 914, 916 (5th Cir. 1998)(*per curiam*); Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998). It is not the conclusion of state post-conviction collateral review processes that starts the running of the limitations

5

period. *See* Bunnell v. Yukins, No. 00-CV-73313, 2001 WL 278259, \*2 (E.D. Mich. Feb 14, 2001)("Contrary to Petitioner's assertion, the limitations period did not begin to run anew after the completion of his post-conviction proceedings.").

As indicated above, section 2244(d)(2) operates to exclude only the time within which a "properly filed application" for post conviction relief is pending in state court. Thus, when a petition or appeal has concluded and is no longer pending, the one year statute of limitations starts to run and the time is counted. A "properly filed application" for post conviction relief under §2244(d)(2) is one submitted according to the state's procedural requirements, such as rules governing time and place of filing. Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998). The Third Circuit Court of Appeals has defined "pending" as the time during which a petitioner may seek discretionary state court review, whether or not such review is sought. Swartz v. Meyers, 204 F.3d 417 (3d Cir. 2000). "Pending," however, does not include the period during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction collateral petition. Stokes v. Dist. Attorney of Phila., 247 F.3d 539, 542 (3d Cir. 2001). Likewise, the statute of limitations is not tolled under §2244(d)(2) for the time during which a habeas petition is pending in federal court. Jones, 195 F.3d at 158.

The AEDPA statute of limitations also may be subject to equitable

tolling. The Third Circuit has held that the federal habeas statute of limitations is subject to equitable tolling only in extraordinary circumstances. *See* Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). In *Merritt*, the Court of Appeals set forth two general requirements for equitable tolling: "(1) that the petitioner has in some extraordinary way been prevented from asserting his or her rights; and (2) that the petitioner has shown that he or she exercised reasonable diligence in investigating and bringing the claim." Id. (internal citations and quotations omitted).

### A. *Statutory Tolling*

In this case, since Bradley did not file a direct appeal after his April 17, 1996, judgment of sentence was imposed, his conviction became final 30 days later on May 17, 1996. Bradley did not file any appeal regarding his judgment of sentence until almost three years later when he filed a motion to appeal *nunc pro tunc* on February 16, 1999. (Doc. 19-5). In this motion, Bradley claimed that there was a violation of his plea agreement and that his counsel failed to file an appeal regarding his sentence despite his request to do so.[3] On September 9, 1999, the trial court denied Bradley's motion which was subsequently construed as a PCRA petition. (Doc. 19-6, Doc. 19-9).

On September 5, 2000, Bradley filed a PCRA petition raising the same claims he raised in his prior motion. (Doc. 19-7). On May 7, 2001, the trial

---

3. The state court later found that Bradley did not use due diligence in discovering that his trial counsel failed to file a direct appeal.

court dismissed the PCRA petition as untimely and it found that Bradley had not been diligent in determining that his counsel had not filed an appeal on his behalf. (Doc. 19-9). Bradley appealed to the PA Superior Court and on October 17, 2002, the court affirmed the dismissal of the PCRA petition. (Doc. 19-10). The Superior Court found that even if Bradley had requested his counsel to file a direct appeal of his conviction, he failed to show that he filed his PCRA petition within 60 days after he discovered this failure as required by 42 Pa.C.S.A. §9545(b)(1)(ii).

On October 10, 2008, Bradley filed another PCRA petition raising similar claims as he previously raised. (Doc. 19-11). On February 18, 2009, the trial court dismissed the PCRA petition as untimely. (Doc. 19-13). Bradley appealed to the PA Superior Court and on November 18, 2009, the court affirmed the dismissal of the PCRA petition as untimely. (Doc. 19-10).

On March 29, 2010, Bradley filed a petition for specific performance of plea agreement raising similar issues as he raised in his prior petitions, *i.e*., he did not receive the agreed upon sentence of two years to run consecutive to any present or future sentence and his trial counsel was ineffective for failing to file a direct appeal challenging his sentence as illegal. (Doc. 19-15). On April 7, 2010, the trial court denied the petition and Bradley appealed. (Doc. 19-16). The Superior Court treated Bradley's filing as a PCRA petition and affirmed its dismissal as untimely on November 30, 2010. (Doc. 19-18).

On May 25, 2011, Bradley filed an "Application for Relief/Seeking

8

Correction and Modification of an Illegal Sentence Due to Obvious Errors, Patent Mistakes and Illegal Sentencing." (Doc. 19-19). The trial court treated the filing as a PCRA petition and dismissed it as untimely on June 1, 2011. (Doc. 19-20). Bradley appealed to the Superior Court and the dismissal of his petition was affirmed on November 5, 2012. (Doc. 19-21). Bradley then filed a petition for allowance of appeal with the PA Supreme Court and it was denied on March 26, 2013. (Doc. 19-22).

The clock for filing a federal habeas petition began running on May 18, 1996, and Bradley then had one year to file a timely habeas corpus petition. Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998). No doubt that Bradley's one-year limitation period expired on May 18, 1997, since he did not have any properly filed appeals pending in the state courts during this time. *See* Almazan v. Commonwealth of PA, 80 F.Supp.3d 602, 605 (E.D.Pa. 2015). Thus, Bradley's numerous PCRA petitions which were dismissed by the state court as untimely do not subject his limitations period to statutory tolling. Bradley does not appear to dispute that his habeas petition is untimely but he claims that equitable tolling should extend the limitations period in his case. As such, his petition for habeas corpus relief under §2254 is barred by the statute of limitations, and should be dismissed as untimely, unless the statute of limitations is subject to equitable tolling.

## B. *Equitable Tolling*

The court must now examine whether the AEDPA statute of limitations

should be equitably tolled to consider Bradley's petition timely filed. Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002), *cert. denied*, 540 U.S. 826, 124 S.Ct. 48, 157 L.Ed.2d 49 (2003)(citing Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617–618 (3d Cir.1998). The limitation period may be tolled when the principles of equity would make the rigid application of a limitation period unfair. Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2560 (2010)("Now, like all 11 Courts of Appeals that have considered the question, we hold that §2254(d) is subject to equitable tolling in appropriate cases."); Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir.2006); Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999).

To be entitled to equitable tolling, [petitioner] must show " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130 S.Ct. at 2562 (quoting Pace, 544 U.S. at 418); Lawrence v. Florida, 549 U.S. 327, 127 S.Ct. 1079 (2007) (quoting id.). Both elements must be established before equitable tolling is permitted. Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (citation omitted). Courts must be sparing in their use of equitable tolling. Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999). In fact, the United States Court of Appeals for the Third Circuit has held that equitable tolling is proper "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998).

10

In Jones, 195 F.3d at 159, the Third Circuit stated that equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." (citations omitted).

In his habeas petition, petitioner states that he is entitled to equitable tolling since his trial counsel (Marc Lovecchio, Esq.) misrepresented to him for four years after his sentence that he filed a direct appeal regarding his illegal sentence claim and that since his counsel "lied" to him, this "amounts to attorney deceit." (Doc. 1). Bradley also claims that the trial court never informed him of his right to file an appeal and that under *Holland* he is entitled to equitable tolling due to attorney malfeasance and the trial court's failure to advise him of his appellate rights at sentencing. Bradley states that not until four years after his sentence did his counsel inform him that no direct appeal was filed. He states that since he missed the deadline to file a direct appeal due to attorney misconduct and not due to his own fault, he is entitled to equitable tolling.

Bradley contends that he has shown extraordinary circumstances beyond his control. He also points out that he was reasonably diligent in acting once he found out his counsel's misrepresentation since his counsel was continuously representing him in his separate capital case and repeatedly told him that he filed an appeal in his case. Bradley states that once his

11

counsel finally admitted to him that he did not file an appeal since he had mistakenly thought that the appeal to which Bradley was referring was in his capital case and not his 1996 assault case, he was out of time to file a PCRA petition in state court and a habeas petition in federal court. Bradley also states that his counsel later claimed that when the trial court appointed him to represent Bradley, the judge failed to clarify that he was appointed as Bradley's "full counsel for the duration [of his case]" as opposed to being only appointed as Bradley's counsel for the sentencing hearing which counsel had thought. Bradley states that this misunderstanding denied him due process.

Thus, Bradley contends that the unprofessional conduct of his trial counsel constitutes extraordinary circumstances entitling him to equitable tolling of his AEDPA limitations period for almost 17 years, *i.e.*, May 1997 to March 2014. He thus claims that "in some extraordinary way" he was prevented from asserting his rights. Bradley maintains that if his trial counsel had been effective and filed a direct appeal as he requested, "the outcome for [him] would have likely been the re-sentencing of [him] to this originally negotiated plea agreement [*i.e.*, a flat two years imprisonment on the assault conviction]."

In Pabon v. Mahanoy, 654 F.3d 385, 401 (3d Cir. 2011), the Third Circuit stated that the relevant question "is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." In

12

Almazan, 80 F.Supp.3d at 608, the court stated that "an equitable tolling inquiry has two prongs—extraordinary circumstances and reasonable diligence—and both must be satisfied." *See also* Sistrunk, 674 F.3d at 190 ('[Petitioner] needed to show both diligence and extraordinary circumstances to succeed on his equitable tolling argument.") Thus, in order to establish that he is entitled to equitable tolling, a petitioner must allege enough facts to satisfy the extraordinary circumstances prong and "he must also show that he was reasonably diligent in bringing his claims." Almazan, 80 F.Supp.3d at 608.

The record indicates that in the May 28, 1992 guilty plea colloquy regarding the assault charge at issue, (Doc. 19-2), Bradley acknowledged he understood that the court was not bound by any plea agreement and did not have to accept it. He also indicated that he understood the permissible range of sentences that could be imposed were a minimum of 33 to 49 months and a maximum of 49-61 months under the sentencing guidelines. Bradley was also specifically advised that he had a right to appeal his conviction to the Superior Court within 30 days after the date of sentencing.

The record also shows that at his April 17, 1996 sentencing hearing, (Doc. 19-4), Bradley was sentenced in two criminal cases, one case involved an aggravated assault charge of a corrections officer, Information Number 91-10, 935, and the second unrelated case involved robbery and burglary charges, Information Number 90-10, 292. The case at issue in Bradley's

13

habeas petition is the assault case. Bradley was previously sentenced to death on a murder charge in October 1991, and an appeal of that sentence was pending when he was sentenced on the assault charge.[4] Attorney Lovecchio was representing Bradley in the robbery and burglary case. The court also appointed attorney Lovecchio to represent Bradley in the assault case since his prior counsel who represented him at his guilty plea was no longer practicing law. There was no objection by either Bradley or attorney Lovecchio to the fact that Bradley's sentence on the assault charge was held almost four years after he pled guilty to this charge. Thus, to the extent Bradley raises a claim in his habeas petition that he was not sentenced within 120 days of his guilty plea, this issue was clearly waived. The court imposed a prison sentence on Bradley's assault case of a minimum of two years and a maximum of ten years to run consecutively to the sentence which the court imposed in Bradley's robbery and burglary case. Attorney Lovecchio then advised the court that the sentence in assault did not comport with Bradley's understanding of what his plea agreement recommended, *i.e.*, "a flat two-year sentence." The Court explained that "there is no flat sentence." Attorney Lovecchio then reserved the right to file a motion for Bradley to withdraw his guilty plea in the assault case. Even though the court did not advise Bradley that he had the right to appeal his sentences within 30 days to the Superior

---

4. Bradley's death penalty conviction was reversed in August 1998. (Doc. 19-23).

Court, as indicated, Bradley had acknowledged that he was advised of this right in his guilty plea colloquy.

Even if the facts of this case constitute the Third Circuit's "high standard" for extraordinary circumstances for purposes of equitable tolling of the AEDPA's one-year deadline, *see* Sistrunk, 674 F.3d at 190, Bradley fails to show that he was reasonably diligent in bringing his claims in a habeas petition. In determining whether extraordinary circumstances exist to warrant the application of equitable tolling, this court must also examine petitioner's due diligence in pursuing the matter under the specific circumstances he faced. Traub v. Folio, No. 04–386, 2004 WL 2252115, at *2 (E.D. Pa. Oct.5, 2004) (citing Schleuter v. Varner, 384 F.3d 69 (3d Cir. 2004)) (affirming dismissal of habeas petition as time barred and not entitled to equitable tolling because lengthy periods of time had elapsed following his conviction before he sought relief). It is petitioner's burden to show both that he acted with reasonable diligence and that extraordinary circumstances caused his petition to be untimely. Id.

Respondents state in their brief, (Doc. 19, at 6-8), as follows:

> Even assuming arguendo that Petitioner initially, with the exercise of due diligence, could not have learned until he filed his first PCRA petition (styled a Petition for Appeal Nunc Pro Tunc on February 16, 1999) that counsel had failed to file an appeal despite his requesting counsel to file an appeal, Petitioner has still failed to demonstrate he diligently pursued his rights or that some extraordinary circumstances prevented timely filing since the filing of the petition for PCRA relief. That is, Petitioner clearly knew of the grounds for filing a habeas petition when the Pennsylvania

15

Superior Court denied his first PCRA appeal on October 17, 2002. See [Doc. 19] Exhibit 10. Despite having raised the failure of counsel to file the requested appeal in the Superior Court, Petitioner did not file a habeas petition; nor did he take any further action in the Pennsylvania courts until October 10, 2008, when he alleged similar grounds to those previously raised. See [Doc. 19] Exhibit 11.

In its October 17, 2002 decision affirming the dismissal of Bradley's first PCRA petition, the Superior Court stated "[o]n February 16, 1999, Bradley filed a petition to appeal *nunc pro tunc*, alleging that while he had requested his counsel to file a direct appeal, counsel had not done so." The trial court, sitting as the PCRA court, initially denied this petition on September 9, 1999. The Superior Court, (Doc. 19-10), explained:

Bradley then filed a PCRA petition on September 5, 2000. In addressing this petition, the PCRA court determined that its prior retroactive application of *Lantzy* was improper, and thus vacated its prior September 9, 1999 order denying Bradley's petition for appeal *nunc pro tunc* and proceeded to reconsider that petition. Concluding that Bradley had not justified the nearly three-year delay after imposition of sentence in filing his petition, on May 4, 2001, the court denied the petition to appeal *nunc pro tunc*, and dismissed Bradley's related PCRA petition as moot.

The Superior Court then found that Bradley's petition to appeal *nunc pro tunc* was untimely under the one-year deadline to file a PCRA petition, which commenced after the expiration of the time to file a direct appeal, and that he failed to meet an exception to this deadline under 42 Pa.C.S.A. §9545(b)(1)(ii) which allows a late filed petition where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." (Id.). The Superior Court stated

16

that Bradley waited nearly three years before filing his petition to appeal *nunc pro tunc* and that "even if [it] were to accept Bradley's after-discovered argument [that his trial counsel did not file a direct appeal], he has failed to assert that his petition was brought within 60 days of his 'discovery' of counsel's ineffectiveness, as required under the PCRA." (Id.). The record also indicates that attorney Lovecchio wrote a letter to Bradley indicating that Bradley was advised to file a habeas petition in federal court as early as August 1998. (Doc. 19-23).

Based on the record, the court finds that at the very latest, if Bradley had been reasonably diligent in bringing his claims, he would have filed his §2254 habeas petition in this court within one year and thirty days after the Superior Court's October 17, 2002 decision denying his petition to appeal *nunc pro tunc* as untimely under the PCRA, *i.e.*, by November 16, 2003. However, Bradley did not file his habeas petition with this court until ten years and four months later. In fact, if Bradley was reasonably confused about whether any other state court filings would have been timely after the Superior Court's October 17, 2002 decision, he should have protectively filed his habeas petition in federal court to preserve his AEDPA limitations period and ask the court to stay and abey the habeas proceedings until any other state court remedies he thought he had were exhausted. *See* Heleva v. Brooks, 581 F.3d 187 (3d Cir. 2009). As such, the court finds that Bradley has not alleged facts that demonstrate reasonable diligence in bringing his claims in

17

a habeas petition. Thus, since Bradley "has not shown enough to satisfy the reasonable diligence prong of the equitable tolling test, his claims are not subject to equitable tolling." Almazan, 80 F.Supp.3d at 609; *see also* Sistrunk, 674 F.3d at 190. Accordingly, the petition is time-barred and will be dismissed.

## III.    Certificate of Appealability

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the instant petition is time-barred. It is statutorily barred, and neither statutory nor equitable tolling apply to the petition.

## IV.    Conclusion

In light of the foregoing, the petition for writ of habeas corpus, (Doc. 1), will be **DISMISSED** as untimely, and the case will be **CLOSED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: April 13, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0797-01.wpd